## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Nos. 14-7077, 14-7078
Consolidated Case

**UNITED STATES OF AMERICA, ex rel. BRIAN BURKE
and BRIAN BURKE, Relator,**
Appellant (No. 14-7077)

vs.

**RECORD PRESS, INC.,**
Appellee (No. 14-7078)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BRIEF FOR APPELLANT BRIAN BURKE

Tyler J. King
FRANKLIN SQUARE LAW GROUP
1225 Eye Street, NW
Washington, DC 20005
(202) 779-9711
tyler@lawgroupfs.com
   *Attorney for Appellant*

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Nos. 14-7077, 14-7078
Consolidated Case

**UNITED STATES OF AMERICA, ex rel. BRIAN BURKE and BRIAN BURKE, Relator,**
Appellant (No. 14-7077)

vs.

**RECORD PRESS, INC.,**
Appellee (No. 14-7078)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

<u>PARTIES AND AMICI</u>

The parties to this litigation are the United States of America, ex rel, Brian

Burke and Records Press, Inc.

<u>RULING UNDER REVIEW</u>

Appellant Brian Burke seeks review of Judge Robinson's Order re Defendant's Motion for Judgment on Partial Findings (Jun. 12, 2013) (Dkt. No. 92), in which Judge Robinson found that Defendant was entitled to judgment based on the facts established in Plaintiff's case, as well as review of of Judge Robinson's Order re Plaintiff's Motion to Alter Judgment (Mar. 31, 2014) (Dkt. No. 101), in which Judge Robinson found that reconsideration of her decision and/or alteration of the judgment was not warranted.

## RELATED CASES

This case is an appeal from case 1:08-cv-00364-DAR from the United States District Court for the District of Columbia. It is related to D.C. Cir. No. 14-7078 (appeal of Record Press), with which it is consolidated.

TABLE OF CONTENTS

**PARTIES AND AMICI** ..........................................................i

**RULING UNDER REVIEW** ..............................................i

**RELATED CASES** .........................................................ii

**CASES** ..............................................................................1

**STATUTES** ........................................................................1

**ADDITIONAL TESTIMONY AND EXHIBITS** .........................2

**MISCELLANEOUS** ...........................................................2

**GLOSSARY** .........................................................................3

**JURISDICTIONAL STATEMENT** ....................................4

**STATEMENT OF THE CASE** ..........................................7

**PROCEEDINGS IN DISTRICT COURT** ..................................7

**STATEMENT OF FACTS** ....................................................7

**SUMMARY OF ARGUMENT** ........................................11

**ARGUMENT** ......................................................................13

   1.  The Court Erred in Not Considering the Text of the
Unambiguous Subject Contract and in Considering Extrinsic
Evidence ..................................................................................13

      a.  The District Court Failed To Consider The Plain Meaning
Of What Both Parties Considered To Be Unambiguous Terms
Of The Contract.......................................................................13

      b.  The District Court Was Not Permitted to Consider any
Extrinsic Evidence regarding the Unambiguous Contract Terms. 14

   2.  The Court Misapplied The Government Knowledge Defense
By Finding A "Meeting Of The Minds".......................................15

      b.  The District Court Improperly Invoked The Government
Knowledge Defense, By Relying On Testimony About Current
Knowledge Of The Contract, Instead Of The Relevant
Knowledge At The Time The Contract Was Made And
Performed. ..............................................................................18

c. The District Court Admitted Potentially Perjured Testimony Of Mr. Adgerson About What a Contracting Attorney Had Indirectly Told Him...................................................................... 20

3. The District Court Did Not Properly Consider Mr. Burke's Expert Witness's Testimony, Who Testified That Record Press In Fact Overcharged Mr. Burke By Exactly Ten Times The Amount He Should Have Been Charged. .................................................. 23

4. The District Court's Findings Of Fact Were Clearly Erroneous Because The Findings Did Not Consider Evidence Of Past Invoices That Was Relevant Both To The Contract's Meaning And The Credibility Of Mr. Wilmot. ......................................... 24

b. The Court Erred in Not Permitting Mr. Burke to Impeach the Testimony of Mr. Wilmot Through the Introduction of Additional Invoices ....................................................................... 25

**CONCLUSION** .............................................................................. **28**

**CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 28** ....................................................................................................... **30**

**CERTIFICATE OF SERVICE** ....................................................... **31**

**ADDENDUM** .................................................................................. **32**

## TABLE OF AUTHORITIES

### CASES

*E.P. Hinkel & Co. v. Manhattan Co., 506 F.2d 201 (D.C. Cir. 1974)

Rowland v. United States, 840 A. 2d 664 (D.C.C. 2000)

*United States v. Nat'l Wholesalers, 236 F.2d 944 (9th Cir. 1956)

United States ex rel Tyson v. Amerigroup Illinois, Inc., 488 F.Supp.2d 719 (2009)

United States ex rel. Mayman v. Martin Marietta Corp., 894 F. Supp. 218 (D. Md. 1995)

United States v. Cripps, 460 F. Supp. 969 (E.D. Mich. 1978)

Crane Helicopter Servs., Inc. v. United States, 45 Fed. Cl. 410 (1999)

U.S. ex rel. Hagood v. Sonoma Cnty. Water Agency, 929 F.2d 1416 (9th Cir. 1991)
United States v. United Techs. Corp., 1996 WL 653620 (D. Conn. Oct. 11, 1996)
United States v. Ehrlich, 643 F.2d 634 (9th Cir.1981))

United States v. Southland Mgmt. Corp., 326 F.3d 669 (Jones, J., concurring)

United States ex rel Durcholz vs. FKW Inc., 189 F.3d 542 (7th Cir. 1999)

United States v. Cushman & Wakefield, Inc., 275 F. Supp. 2d 763 (N.D. Tex. 2002)

### STATUTES

31 U.S.C. §§ 3729-3733

41 U.S.C. §§ 7101-7109

## ADDITIONAL TESTIMONY AND EXHIBITS

Record Press Invoices, Volume 1.1 .................................. Appendix 00001104

Record Press Invoices, Volume 1.2 .................................. Appendix 00001304

Record Press Invoices, Volume 2.1 .................................. Appendix 00001511

Record Press Invoices, Volume 2.2 .................................. Appendix 00001660

Record Press Invoices, Volume 2.3 .................................. Appendix 00001836

Deposition of Hugh Wilmot ........................................... Appendix 00002373

## MISCELLANEOUS

Cibinic, Nash & Nagle, Administration of Government Contracts (4th ed. 2006)

SENATE JUDICIARY COMMITTEE, FALSE CLAIMS AMENDMENTS ACT OF 1986, S. REP. NO. 99-345 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5272

The Government Knowledge Defense To The Civil False Claims Act: A Misnomer By Any Other Name Does Not Sound As Sweet, 4 Idaho L. Rev. 41.

## GLOSSARY

FCA: False Claims Act

GPO: Government Printing Office

## JURISDICTIONAL STATEMENT

The District Court had jurisdiction under 28 U.S.C. § 1331 and 31 U.S.C. § 3732(a), which specially confer jurisdiction to the District Court over actions brought pursuant to 31 U.S.C. §§ 3729 and 3730. The District Court had personal jurisdiction over Appellee Record Press pursuant to 31 U.S.C. § 3732(a) because Record Press has submitted and continues to submit bills to the GPO office in this jurisdiction, and acts prohibited by 31 U.S.C. § 3729 occurred in the relevant judicial district.

This Court's jurisdiction over the appeal from the District Court's order granting summary judgment to Record Press on all counts rests on 28 U.S. Code § 1291 and 31 U.S. Code § 3732.

The District Court's order was entered on June 12, 2013, and Mr. Burke timely filed a notice of appeal on April 30, 2014.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1. Whether the District Court erred and/or abused its discretion by failing to consider the plain meaning of the contract and instead relying on the testimony of a single government official and the testimony of a Record Press employee; and/or abused its discretion in denying Plaintiff's motion to amend its decision thereof.

2. Whether the District Court erred and/or abused its discretion by improperly invoking the Government Knowledge Defense; and/or abused its discretion in denying Plaintiff's motion to amend its decision thereof.

3. Whether the District Court erred and/or abused its discretion by failing to consider the testimony of Mr. Burke's expert witness; and/or abused its discretion in denying Plaintiff's motion to amend its decision thereof.

4. Whether the District Court erred and/or abused its discretion by refusing to admit all of the relevant invoices; and/or abused its discretion in denying Plaintiff's motion to amend its decision thereof.

5. Whether the District Court erred and/or abused its discretion by prohibiting admission of impeachment evidence; and/or abused its discretion in denying Plaintiff's motion to amend its decision thereof.

## STATEMENT OF THE CASE

### PROCEEDINGS IN DISTRICT COURT

On February 29, 2008, Mr. Burke filed a complaint charging

Record Press with billing unauthorized and fraudulent amounts for the

printing of briefs in violation of the False Claims Act through certain

practices set forth in the complaint. The parties appeared before

Magistrate Judge Deborah A. Robinson on February 14, 2011. Judge

Robinson granted Record Press's Rule 52 (c) Motion for Judgment on

Partial Findings on June 12, 2013. Mr. Burke filed a Motion to Alter

the Judgment on July 11, 2013, which was denied (along with Record

Press's Motion for Attorney Fees and Expenses) on March 31, 2014.

Mr. Burke subsequently filed a notice of appeal on April 30, 2014.

### STATEMENT OF FACTS

On July 5, 2007, Mr. Burke reported to Lloyd Rawls of GPO's

Inspector General's Office that Record Press committed fraud against

the GPO, U.S. Attorney's Office, U.S. Taxpayers and, potentially, Mr.

Burke himself. Mr. Burke had standing to bring this claim as a private

person under 31 U.S. Code § 3730(b). Mr. Burke stated that Record

Press was charging the government, *et. al.*, ten times the correct

7

amount for "collating & trimming" than allowed in the 2231-S Contract (the "Contract"). (E.106).

Section II, on page 14, of the Contract includes a term for "collating, trimming to size, and binding per 100 pages" and also stipulates twice that a "running rate" of "per 10 pages" is applied to items under Section II. As admitted by Record Press in the District Court, Record Press applied the 10-copy running rate to other terms under Section II, but did not apply the 10-copy running rate to Section II(D) for collating, trimming to size, and binding per 100 pages. (E.639).

Mr. Burke asserts that the United States has been overcharged by Record Press because they charged this line item for every copy of each brief or appendix prepared, rather than per 10 copies as specified in the contract. Mr. Burke believes the 10-copy running rate was applied to this section since all the invoices were for runs of at least ten (10) copies. (E.1104-2372). At trial, the president of Record Press, Mr. Hugh Wilmot, testified that Record Press had, at some point, "issue[d] invoices pursuant to this contract that called for a number of copies less than 10." (E.622).

When Mr. Burke attempted to impeach the witness by providing a chronological "stack" of past invoices whereby no invoice charged for less than 10 copies, the Court denied the use of the past invoices by first stating that "the Court [had previously] ordered[1] that at issue here -- the invoice at issue would be confined to -- invoices at issue are confined to two" to which Mr. Burke reminded the judge that the previous order was in regards to whether all past invoices were, "at issue", rather than what Mr. Burke was currently using the past invoices for, which was to examine and impeach a witness. (E.623-4, E.1104-2372).

Also at trial, a branch chief of the Commercial Billing Section of the GPO, Mr. Calvin Adgerson, testified that he had been told from his section chief, Ms. Rosa Smith, that she had been told from an unnamed contracting attorney that the 10-copy running rate did not apply to Section II(D), which, even if it were true, would have merely been that particular unnamed contracting attorney's interpretation at that moment and not necessary the government's actual interpretation of the Contract, nor would it have been evidence of the government's

---

[1] Referring to the February 3, 2011 Minute Order by Magistrate Judge Deborah A. Robinson.

interpretation of the Contract at the time it was made and/or at the

time the false claims were submitted.

## SUMMARY OF ARGUMENT

The District Court by failed to find and therefore consider the unambiguous and undisputed terms of the contract, and instead relied on extrinsic evidence that, "Defendant and the government had a meeting of minds with respect to rates which defendant would charge for services[,]" and testimony from a government official that "there was no fraud." (E.808). The District Court's failure to find and consider the plain meaning of "per 10" to mean "per 10", resulted in misinterpreting the contract to mean what Mr. Raymond Sullivan testified he understood about the applicable rate, even though it is well established that the authorization of a single individual in the government is not sufficient to escape FCA liability.

The District Court failed to find and consider extrinsic evidence in favor of Mr. Burke, by failing to find and consider expert testimony that Record Press had in fact overcharged Mr. Burke by exactly ten times the amount he should have been charged under Section II(D) for, "collating, trimming to size, and binding charge" (E.707). The District Court neither mentioned the testimony, nor explained why it elected to ignore this clear and convincing evidence of wrongdoing on the part of Record Press.

11

The District Court failed to find and consider extrinsic evidence in favor of Mr. Burke, by failing to find and consider all of the invoices issued under the contract, which together demonstrated that not a single order under the contract involved less than (10) copies.

By failing to consider all the invoices and this fact, the District Court failed to find and consider impeachment evidence against Mr. Wilmot, because he had stated that Record Press had orders for less than ten (10) copies, which involved a key witness on a key issue in the case.

ARGUMENT

## **ARGUMENT**

1. **The Court Erred in Not Considering the Text of the Unambiguous Subject Contract and in Considering Extrinsic Evidence**

It is well-established that where the terms of a contract are clear and unambiguous, a court must assume the meaning ordinarily ascribed to those words reflects the intentions of the parties, and may only look outside the four corners of the contract for assistance in interpreting ambiguous terms.

### a. **The District Court Failed To Consider The Plain Meaning Of What Both Parties Considered To Be Unambiguous Terms Of The Contract.**

Mr. Burke introduced the Contract into evidence as part of Exhibit A during trial on June 29, 2011. (E.618). Parties agree that the Contract was the binding authority between Record Press and the government for the relevant time period, and that its terms where not ambiguous. Despite the central role of the subject contract's text, it appears nowhere in the District Court's Memorandum Opinion granting judgment to Record Press, nor does the Memorandum

Opinion explain why the plain meaning of the Contract's text should not be considered at all. Accordingly, the District Court erred and/or abused its discretion by failing to consider the most important piece of evidence, which was the text of the unambiguous Contract.

b. **The District Court Was Not Permitted to Consider any Extrinsic Evidence regarding the Unambiguous Contract Terms**

While interpreting the unambiguous Contract, the District Court should have properly stayed within the four corners of the Contract, but instead erred and/or abused its discretion by considering evidence outside of the plain meaning of the contract. E.P. Hinkel & Co. v. Manhattan Co., 506 F.2d 201, 204 (D.C.Cir.1974) ("where the language of a contract is clear and unambiguous on its face, a court will assume that the meaning ordinarily ascribed to those words reflects the intentions of the parties.")

Furthermore, in Hinkel, this Court ruled that, "this jurisdiction follows the general rule that the court interprets unambiguous contractual provisions. In so doing, the court does not consider extrinsic evidence, but finds the intention of the parties in the language used to express their agreement. See Vogel v. Tenneco Oil Co., 150 U.S.App.D.C. 383, 465 F.2d 563 (1972); Henson Creek

14

Development Co. v. Richards, 296 F.Supp. 915 (D.D.C.1969);

Burbridge v. Howard University, 305 A.2d 245 (D.C.App.1973);

Minmar Builders, Inc. v. Beltway Excavators, Inc., 246 A.2d 784

(D.C.App.1968); Gagnon v. Wright, 200 A.2d 196 (D.C.App.1964)."

Hinkel, at 204. The District Court did not follow this legal standard

because it reviewed extrinsic evidence in order to interpret the

Contract.

At no point did either party claim that the terms of the contract

were ambiguous. In fact, the contract clearly states on page 14 as a

header of Section II that "RUNNING RATE IS PER 10 COPIES.

*[sic]*". (E.106). Moreover, the Contract provides, "Running Per 10

Copies" at the top of the column listing the prices.  (E.106).  By

looking to the intent of the parties and to other reports and testimony

outside of the four corners of the contract without being prompted to

by ambiguity in the language, the District Court erred in its

interpretation of the evidence.


2. **The Court Misapplied The Government Knowledge Defense By Finding A "Meeting Of The Minds".**

a. **The District Court Improperly Invoked The Government Knowledge Defense By Citing The Knowledge Of The Government Official Instead of Determining What Record Press Allegedly Thought The Government Knew Or Did Not Know.**

Since Record Press did not, and could not have, disputed the plain meaning of "PER 10", Record Press instead relied on testimony of government officials, including Mr. Adgerson, as evidence of the *government's* knowledge. However, under the government knowledge defense doctrine, the knowledge at issue is *Record Press's* knowledge, not that of a single government official.

The government knowledge defense tests contractor's knowledge of what the contractor believed the government knew. See U.S. ex rel. Hagood v. Sonoma Cnty. Water Agency, 929 F.2d 1416, 1421 (9th Cir. 1991)("The requisite intent is the knowing presentation of what is known to be false. That the relevant government officials know of the falsity is not in itself a defense.")(Citing United States v. Ehrlich, 643 F.2d 634, 638–639 (9th Cir.1981)); 31 U.S.C. § 3729(a)(1-2) (what constitutes the offense is not intent to deceive but knowing presentation of a claim that is either "fraudulent" or simply "false.").

Record Press states that Mr. Burke's claim fails as a matter of law because the requisite intent to establish False Claim Act liability 'cannot be inferred from the mere assertion that [the contractor's] interpretation . . . was incorrect." Appellee's Motion for Summary Affirmance, p. 10. However, Record Press must have known that the claim was false because no questions were asked by Record Press of contracting officers. See Crane Helicopter Servs., Inc. v. United States, 45 Fed. Cl. 410, 433 (1999) ("[The FCA's knowing standard was designed to address] 'the 'ostrich-like' refusal to learn of information which an individual, in the exercise of prudent judgment, had reason to know'" and to reach "those who ignore obvious warning signs."). See also SENATE JUDICIARY COMMITTEE, FALSE CLAIMS AMENDMENTS ACT OF 1986, S. REP. NO. 99-345, at 7 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5272 ("But the Committee does believe the civil False Claims Act should recognize that those doing business with the Government have an obligation to make a limited inquiry to ensure the claims they submit are accurate.")

Here, Mr. Wilmot, president of Record Press, admitted in his deposition that he never discussed with any GPO representative "any

preliminary discourse regarding the definitions or meanings of any of

the terms in the contract", nor any subsequent discourse regarding

"the meaning of any of these contract", including admitting that he did

not "speak with [a GPO representative] about this particular contract

or about this particular case" after the case had been filed. (E. 2407-

2408)

Accordingly, since the undisputed evidence demonstrates that

Mr. Wilmot had no knowledge at all of what the government knew

about the contract terms, there was no meeting of minds, and therefore

no basis upon which to present a defense involving the government's

knowledge at all.

> **b. The District Court Improperly Invoked The Government Knowledge Defense, By Relying On Testimony About Current Knowledge Of The Contract, Instead Of The Relevant Knowledge At The Time The Contract Was Made And Performed.**

The United States Court of Appeals for the Ninth Circuit

determined that "the test of whether a claim is false must be as of the

date when the claim is made." National Wholesalers at 950.

Accordingly, "every one of the invoices prior to [when the contracting

officer learned of the mislabeling] was false when made." Id.

Moreover, an FCA defendant should not benefit if someone from the government learns of the falsity and simply does nothing about it. See United States v. Southland Mgmt. Corp., 326 F.3d 669, 682 n.9 (Jones, J., concurring) ("In principle, it would seem that the government's knowledge of a false claim would not be an effective defense . . . if the claimant was colluding with the government employee to submit a false claim . . . ." (citing United States ex rel Durcholz vs. FKW Inc., 189 F.3d 542, 544-45 (7th Cir. 1999)). The Seventh Circuit has held that mere governmental acquiescence is insufficient to sustain a government knowledge defense. Durcholz at 546. The government must both know of, and approve, the particular claim before it is submitted. The opinions of other circuit courts appear to have adopted a similar standard, see The Government Knowledge Defense To The Civil False Claims Act: A Misnomer By Any Other Name Does Not Sound As Sweet, 4 Idaho L. Rev. 41.

Therefore, the 'meeting of minds' must occur *prior to* submitting the claim. Here, the only evidence cited by the District Court in support of the government's intent was based on the hearsay evidence of an unknown contracting attorney who may or may not have interpreted the contract correctly or even consistently in

accordance to the intent of the United States when the contract was entered into. (E.676-7). The fact that the contracting officer now has knowledge of the terms and interprets them differently does not change the fact that every one of the invoices prior to [when the contracting officer learned of the mislabeling] was false when made.

During trial, Mr. Sullivan, at the time serving as the Acting Managing Director of Customer Services at the Government Printing Office, testified that he had never discussed the interpretation of how the running rate per-10-copies would be applied with Mr. Wilmot, because he had, "never met or had any discussions with Mr. Wilmot." (E.780).

### c. The District Court Admitted Potentially Perjured Testimony Of Mr. Adgerson About What a Contracting Attorney Had Indirectly Told Him.

The District Court's findings of fact were primarily based on government officer Calvin Adgerson's testimony about what the contracting attorney had indirectly told him by stating that, "[I]ndeed, the alleged victim, through the agency official who appeared in Plaintiff's case-in-chief, testified that there was no fraud," and that, "Plaintiff offered no evidence to the contrary ". (E. 808) However, this

reasoning is improper because contracting officers are, "not authorize[d] . . . to settle, compromise, pay, or otherwise adjust any claim involving fraud." 41 U.S.C.A. § 7103; See also United States v. Nat'l Wholesalers, 236 F.2d 944, 950 (9th Cir. 1956) ("In such palming off as we have here we do not believe that the Congress ever intended that contracting officers should have the power to vitiate the False Claims statute.")  Further, although the contracting officer has the authority to modify a contract, a retroactive modification under such circumstances was, "void as against public policy."Id.

Additionally, "This Court has noted that mere acquiescence (rather than approval) by government employees is not sufficient to avoid liability, as requiring mere acquiescence would preclude FCA liability any time a government employee and a defendant were in cahoots. United States ex rel Tyson v. Amerigroup Illinois, Inc., 488 F.Supp.2d 719 (2007)(Citing U.S. ex rel. Asch v. Teller, Levit & Silver-trust, P.C., 2004 WL 1093784 at *3 (N.D.Ill. May 7, 2004). Significantly, government employees, including procurement officials, lack the authority to waive fraudulent conduct." Nat'l Wholesalers at 950; See also United States v. Cushman & Wakefield, Inc., 275 F. Supp. 2d 763, 771 (N.D. Tex. 2002) ("A violation of the

rights of the United States may not be waived or ratified by the unauthorized acts of its agents."); United States ex rel. Mayman v. Martin Marietta Corp., 894 F. Supp. 218, 223 (D. Md. 1995) ("[A] government officer cannot authorize a contractor to violate federal regulations."); United States v. Cripps, 460 F. Supp. 969, 973-74 (E.D. Mich. 1978) (stating that a federal employee who urges someone to defraud the government acts ultra vires).  Because they lack the authority to waive fraud, acquisition officials cannot "ratify" such conduct. See Cibinic, Nash & Nagle, Administration of Government Contracts (4th ed. 2006) supra note 150, at 48 ("[I]llegal actions cannot be ratified because officials lack the authority to enter into illegal agreements."); cf. Winter v. Cath-DR/Balti Joint Venture, 497 F.3d 1339, 1347 (Fed. Cir. 2007) (noting that authority is a prerequisite to ratification).

Moreover, the Federal Acquisition Regulation (FAR) also contains express limitations on contracting officer authority when a claim is suspected to be false or tainted by fraud.  Pursuant to FAR 33.210(b), the contracting officer has no authority to settle, compromise, pay or adjust "any claim involving fraud."  Section 605(a) of the Contract Disputes Act removes any authority from the head of an agency "to

settle, compromise, pay, or otherwise adjust any claim involving fraud." This statutory restriction on agency heads extends downward to subordinate agency procurement officials. see also United States v. United Techs. Corp., No. 5:92-CV-375 (EBB), 1996 WL 653620, at *2 (D. Conn. Oct. 11, 1996) ("The statute's restriction on the authority of agency heads should be read as encompassing their subordinates."); cf. Contract Disputes Act of 1978, S. REP. NO. 95-1118, at 19 (1978), as reprinted in 1978 U.S.C.C.A.N. 5235, 5253 ("[I]t is not the intent of this section to authorize Agency heads, contracting officers, or agency boards to settle or compromise claims independent of their legal or contractual merits . . . ."). No False Claims Act defendant, including Record Press, should benefit simply because someone in the government learned of the falsity and failed to address it. Accordingly, the District Court erred in relying primarily on the testimony of Mr. Adgerson to establish that he, or the unnamed contracting attorney, had the authority to dictate the intent of the government as to the contract.

3. **The District Court Did Not Properly Consider Mr. Burke's Expert Witness's Testimony, Who Testified That Record Press In Fact Overcharged Mr. Burke By Exactly Ten Times The Amount He Should Have Been Charged.**

The District Court made no mention of Mr. Morris Gocial's testimony in the June 12, 2013 Order, outside of stating without explanation that the testimony was "confined to damages." (E.804). At the trial, Mr. Morris Gocial testified as an expert witness and concluded based on his analysis that Record Press had in fact overcharged Mr. Burke by exactly ten times the amount he should have been charged for "collating, trimming to size, and binding charge" (E. 703). Accordingly, the Trial Court clearly erred and/or abused its discretion by not considering relevant evidence presented at trial.

4. **The District Court's Findings Of Fact Were Clearly Erroneous Because The Findings Did Not Consider Evidence Of Past Invoices That Was Relevant Both To The Contract's Meaning And The Credibility Of Mr. Wilmot.**

   a. **The District Court Failed To Consider A Fact Central To The Contract's Meaning.**

Since the main question in the matter was the meaning of "PER 10" the District Court erred and/or abused its discretion by failing to consider all the invoices issued under the contract, and the fact that there was not a single invoice for any run of copies less than ten (10). By failing to admit all the invoices, the Court was not able to consider

an essential fact relevant to the interpretation of the two (2) invoices

"at issue" in the matter.

    b. **The Court Erred in Not Permitting Mr. Burke to Impeach the Testimony of Mr. Wilmot Through the Introduction of Additional Invoices**

Mr. Wilmot's testimony and credibility are central to the case

and would be relied upon by the fact finder. Mr. Wilmot's testimony

was inconsistent with his own previous statements and with the text of

the Contract itself. Namely, Mr. Wilmot testified, with respect to

Section II of the contract, that Record Press was expected to charge

the running rate for II(A) and (B), but was not expected to charge the

running rate for II(D). (E.638). Mr. Wilmot's explanation was that

Section II(D) of the contract stipulated the price was $12.25 "per 100

pages". However this statement is inconsistent with his past

statement that section II(B) of the contract should have the running

rate applied even though section II(B) also stipulated that the cost was

"per page." Accordingly, Mr. Wilmot's testimony that the running

rate should have applied to II(B), but not II(D), was inconsistent with

the clear language of the Contract, and inconsistent with his own

rationale.  The District Court erred and/or abused its discretion by

failing to find and consider these inconsistencies, regarding Mr.

Wilmot's credibility.

Record Press states that, "[a]t the pre-trial conference, Burke

and Record Press agreed that the trial would concern only those two

invoices" and that "[Mr. Burke's] counsel further confirmed at trial

that [Mr. Burke] did not intend to offer any other invoices into

evidence."  Appellee's Motion for Summary Affirmance, fn 4.

Record Press further characterizes Mr. Burke's attempt to introduce

past invoices as a violation of this agreement. However, this is a

misstatement, as further invoices were only not to be introduced as

substantive evidence. At the trial, Mr. Burke presented the collection

of invoices only after Hugh Wilmot provided impeachable testimony

that there existed past invoices that "called for a number of copies less

than 10". (E. 622, 624).  Record Press objected to the use of the past

invoices on the grounds of relevance. (E.624). The Court wrongfully

denied the use of said collection, stating that it had already ordered

that only the two invoices directly affecting Mr. Burke would be at

issue, but never addressed the issue of whether or not the past invoices

could be used as demonstrative facts that would shed light on the two

(2) invoices "at issue" or to impeach the witness's testimony, and did not allow any further line of questioning as to those issues.

Moreover, Mr. Burke explained the relevance and material nature of the relationship of invoices to the contract[2]. It has been well documented by this Court that when a fact is relevant to the merits of the case extrinsic evidence is admissible regarding that fact.[3] Rather than determining whether the extrinsic evidence should be admitted as relevant for purposes of determining the merits of the case, the District Court sustained the objection claiming the documents were "not relevant, given the most recent orders that the Court entered with respect to the issues in the case." (E.624). However, the February 3, 2011, Court Order that the District Court was referring to related to whether other invoices were "at issue" and not whether they were admissible to impeach a witness or were admissible as extrinsic

---

[2]  Specifically, Mr. Burke stated that the fact of whether past invoices were for less than 10 copies was relevant and material because the fact was "related to whether or not the contract that calls for the running rate of 10 would imply that the running rate applies to these invoices" since "every single invoice is for a number of copies greater than 10". *Ex. F, Trial Transcript. Part 1. 26:1-12.*

[3] Rowland v. United States, 840 A 2d. 664, 680 (D.C.C. 2000) which states: "Thus, [T]he matter is non-collateral and extrinsic evidence consequently admissible if the matter is itself relevant to a fact of consequence on the historical merits of the case. When the fact is logically relevant to the merits of the case as well as the witness's credibility, it is worth[y] of the additional court time entailed in hearing extrinsic evidence"

evidence of whether the 10-copy running rate term applied to Section II(D) of the Contract (where no invoice was for less than ten (10) copies). Accordingly the District Court erred and/or abused its discretion by prohibiting Mr. Burke from using the invoices at trial and as a result the District Court's findings of fact were clearly erroneous because they were based on an incomplete record of material facts.

## CONCLUSION

The District Court erred and/or abused its discretion by ignoring the plain meaning of a contract, and instead imputing a meeting of the minds, based on a government official's statement "that there was no fraud", and ignoring Record Press's statement, and another government official's statement, that they had no meeting of the minds; and the District Court did not find and consider the actual language of the unambiguous subject contract, expert testimony, and a key fact. Accordingly, this Court should vacate the District Court's Order re Motion for Judgment on Partial Findings and remand with instructions to correct these mistakes and/or errors.

Respectfully submitted,

Tyler Jay King, Esq.
Franklin Square Law Group
1225 Eye Street, NW
Washington, DC 20005
(202) 779-9711

## CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 28

I hereby certify that the foregoing BRIEF FOR APPELLANT

BRIAN BURKE contains no more than 14,000 words and fully

complies with Circuit Rule 28.

Tyler Jay King, Esq.
Franklin Square Law Group
1225 Eye Street, NW
Washington, DC 20005
(202) 779-9711

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 2, 2015, I caused the foregoing BRIEF FOR APPELLANT BRIAN BURKE to be served by electronic format via ECF and hand-served by courier upon:

John Lomas
McKenna Long & Aldridge LLP
1900 K Street, NW, Suite 100
Washington, DC 20005
*Counsel for Appellee Record Press, Inc.*

Tyler Jay King, Esq.
Franklin Square Law Group
1225 Eye Street, NW
Washington, DC 20005
(202) 779-9711