Oral Argument is Not Yet Scheduled

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

Nos. 14-7077, 14-7078
Consolidated Case

_____

## UNITED STATES OF AMERICA, ex rel. BRIAN BURKE
## and BRIAN BURKE, Relator,
Appellant (No. 14-7077)

vs.

## RECORD PRESS, INC.,
Appellee (No. 14-7078)

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

APPELLANT / CROSS-APPELLEE BRIAN BURKE'S
SECOND CORRECTED RESPONSE AND REPLY BRIEF

_____

Tyler Jay King
FRANKLIN SQUARE LAW GROUP
1225 Eye Street, NW
Washington, DC 20005
(202) 779-9711
tyler@lawgroupfs.com
    _Attorney for Appellant_

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................... 1

GLOSSARY ........................................................................................ 1

STATEMENT OF FACTS.................................................................... 2

SUMMARY OF ARGUMENT............................................................. 3

ARGUMENT ...................................................................................... 4

1.   Record Press's Argument That The District Court's Findings Were Plausible Misses The Point By Failing To Address Mr. Burke's Argument That The Subject Contract Is Unambiguous. .......................... 4

2.   Record Press Cannot Rely On The "Spreadsheet". ........................... 6

a.   Record Press Fails To Address Mr Burke's Arguments That The District Court (1) Misapplied The Government Knowledge Defense, And (2) Did Not Consider Expert Witness Testimony On Damages That Was Also Relevant To Liability. ...................................................... 6

3.   The District Court Properly Denied Record Press's Motion To Award Attorney Fees. ................................................................... 10

a.   Standard Of Review........................................................................ 10

b.   The Procedural History Of This Case Demonstrates That Mr. Burke's Case Is Neither Frivolous Nor Vexatious And That Record Press Is Not Entitled To Attorneys' Fees ................................. 11

4.   The District Court Did Not Err As Matter Of Law When It Summarily Dismissed RP Motion For Fees As Wholly Collateral....... 12

a.   The District Court Did Not Abuse Its Discretion In Summarily Denying Fees Under The False Claims Act Fee-Shifting Statute As It At No Point Established That Mr. Burke's Claim Was Frivolous Or Vexatious. ................................................................. 12

b.   The District Court Did Not Err In Not Accepting Mr. Burke's Admissions Because There Were No Admissions To Accept. ............. 14

c.  Mr. Burke And Counsel Did Not Concede Liability Under 28 U.S.C. § 1927. .................................................................................... 15

d.  Mr. Burke Did Not Address The Reasonableness Of Record Press's Fees As It Was Unnecessary And Costly To Do So Because Mr. Burke Already Established That Record Press Was Not Entitled To Any Fees At All ................................................................................................ 17

**CONCLUSION** ...................................................................... **19**

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(B)(ii)** ................................................................... **20**

**CERTIFICATE OF SERVICE** ............................................... **21**

## <u>TABLE OF AUTHORITIES*</u>

### <u>CASES</u>

*Allison Engine Co. v. United States ex rel Sanders,* 128 S. Ct. 2123 (2008)                                                                9

*Maas v. United States*, 371 F.2d 348, 351-352 (D.C. Cir 1966)      11

*Nat'l Ass'n of Mfrs. v. DOL*, 159 F.3d 599 (D.C. Cir. 1998)          10

*Reliance Ins. Co. v. Sweeney Corp*., Md., 792 F.2d 1137 (D.C. Cir 1986)                                                                15

*U.S. ex rel. Hendow v. Univ. of Phoenix,* 461 F.3d 1166, 1170 (9th Cir. 2006)                                                           8-9

*United States ex rel. Augustine v. Century Health Services, Inc.,* 289 F.3d 409 (6th Cir. 2002)                                            8

*United States v. Southland Mgmt. Corp.,* 326 F.3d 669, 674-75 (5th Cir. 2003) (en banc)                                                  9

*Wallace v. Skadden, Arps, Slate, Meagher & Flom, LLP*, 362 F.3d 810 (D.C. Cir. 2004)                                                     10

### <u>MISCELLANEOUS</u>

*Steven L. Briggerman, False Claims Act Amendments: A Major Expansion in the Scope of the Act,* 23 No. 11 Nash & Cibinic Rep., ¶ 58 (November 2009)                                         9

*United States of America's Statement of Interest, U.S. ex rel. Howard v. Lockheed Martin Corp.,* 1:99-cv-00285, S.D. Ohio (July 3, 2013).                                                        7-8

*United States' Amicus Curiae Brief, U.S. ex rel. Hooper v. Lockheed Martin Corp.,* 2:08-cv-00561, C.D. Cal. (Dec. 13, 2010), at pp. 6-7                                                     8

***\*Mr. Burke does not chiefly rely on any particular authorities in this response and reply brief.***

# **GLOSSARY**

FCA: False Claims Act

GPO: Government Printing Office

## <u>STATEMENT OF FACTS</u>

Record Press continues to incorrectly assert its legal arguments by mischaracterizing its own interpretation of the subject contract as fact. For example, Record Press's "Statement of Facts" asserts as fact that the "running rate" contract term only applied to line-items for "Complete Cover" and "Text per page." *Appellee Brief, p. 7*.  Record Press argues that its interpretation of the contract is fact because there is another document, which is not the contract, which proves its interpretation is fact. *Id., p. 8*.

Moreover, in typical fashion, Record Press focuses its attention not on the merits of the main substantive legal issues, but instead focuses on personal attacks on both Mr. Burke and Mr. Burke's attorney with worn-out arguments about Mr. Burke and/or his attorney causing delays and/or acting frivolously. *Id., pp. 10-16*.

## SUMMARY OF ARGUMENT

Record Press's response brief simply side-steps the issues that Mr. Burke raises, because Record Press simply adopts the District Court's rationales without actually directly addressing the issues that Mr. Burke raises about them.  Record Press argues by reiterating the District Court's findings on the various issues, while failing to take on the import of how Mr. Burke has challenged them.

Record Press's cross-appellate brief relies upon misstatements of Mr. Burke's statements and pleadings and the District Court's finding. Once those misstatements and distortions are corrected, it is immediately apparent that the District Court did not abuse its discretion in denying Record Press's request for attorneys' fees.

3

## ARGUMENT

**1. Record Press's Argument That The District Court's Findings Were Plausible Misses The Point By Failing To Address Mr. Burke's Argument That The Subject Contract Is Unambiguous.**

Record Press's argument misses the point by failing to address the fact that the District Court did not consider the plain-meaning of what the parties agreed were unambiguous contract terms. Instead, Record Press appears to rely on the argument that the subject contract is not itself evidence, by arguing that, "[w]itnesses from both the GPO and Record Press, the only two parties to the Contract, testified ... [and] Burke, who is not a party to the Contract, and never worked for record Press or the GPO, offered no contrary evidence." *Id., p. 19*. Record Press then extends this to argue that the alleged meeting of the minds demonstrates that Record Press could not have possessed the requisite state of mind to support a False Claims Act claim. *Id., p. 21*.

Moreover, Record Press argues that, "the undisputed evidence confirms that Mr. Wilmot and Record Press knew, both from the GPO's invitation for bids and from Record Press's long course of conduct with the GPO, that the per 10 copy running rate did not apply to the collating, trimming to size and binding price term." *Id., p 25-26*. This argument actually bolsters Mr. Burke's assertion that the

4

District Court erred by failing to permit Mr. Burke to admit all of the

invoices under the contract in order to impeach the testimony of Mr.

Wilmot, since Mr. Wilmot testified during his deposition that Record

Press did runs of one copy.  *E.247.*   Mr. Wilmot testified in his

deposition that,

> "Collating, trimming to size and binding refers to in the production process of a brief, a record or an appendix, when these documents that could be voluminous are sent to the printer, they must be collated in terms of document, complete document sets.  Once they have been collated by the -- the printing and finishing department, okay, it is trimmed to size based on the guideline of the particular court.  Once it's trimmed to size, it is then brought over from the guillotine cutter to the bindery department, okay, or the binder.  It is then placed in the binder and the cover is fed in and in that process, a glue is place don the back of the book and the cover automatically wraps to the book.  It then drops to the bottom of the bin.  It is then placed on a cart and brought back after the complete number of books have been bound that were ordered.  Once that process is done it is brought over to the guillotine cutter again and then it is trimmed to final size to ensure that the cover and the product is a perfect representation of Record Press's abilities."  *Id. p. 94-95, lines 8-22 and 1-8.*

The next question to Mr. Wilmot was whether Record Press

would ever run only one copy, to which Mr. Wilmot responded,

"Absolutely.  That could fall under, I want another copy or simple

reprint of one copy."  *Id., p. 95, lines 11-13*.  Since there was not one

single invoice issued under the subject contract that included a run of

less than ten (10) copies, let alone a single copy, this would have been

5

extremely compelling both to impeach Mr. Wilmot's testimony and to support Mr. Burke's plain-meaning interpretation.

### 2. Record Press Cannot Rely On The "Spreadsheet".

Record Press relies on a spreadsheet allegedly provided by the GPO to Record Press in order to prove that the running rate does not apply, however this argument fails because the fact that it was "sent out" with invitations for bids does not create a merger of its terms, and there was no allegation that its terms were incorporated into the subject contract, and moreover, Record Press makes no attempt to explain how the values under the "Basis of Award" and "Unit Rate" columns on that spreadsheet relate to the pertinent line items at issue and therefore how they would correspond to the subject contract. Accordingly, Record Press's reliance on the spreadsheet is clearly an attempt to distract the focus away from the subject contract terms themselves.

### a. Record Press Fails To Address Mr Burke's Arguments That The District Court (1) Misapplied The Government Knowledge Defense, And (2) Did Not Consider Expert Witness Testimony On Damages That Was Also Relevant To Liability.

6

**i. Record Press Incorrectly Concludes That The District Court Did Not Apply The Government Knowledge Defense, Because It Did Not Use The Words "Government Knowledge Defense".**

Record Press attempts to side step the very issue on appeal by claiming that the District Court did not actually invoke the government knowledge defense.  However, this is inapposite to Record Press's argument that the District Court did not err because there was a "meeting of the minds", which supported Record Press's claim that it had correctly interpreted the subject contract.  *Appellee Brief, p. 21.*

In addition, proper application of the government knowledge defense in this case is especially important because the GPO had actually passed the costs onto the SDNY US Attorneys Office and charged an additional 7%.  This also explains why Mr. Burke would claim that it was not the GPO that was defrauded but rather the other government agency onto which the GPO passed the costs.  *Appellee Brief, p. 24.*

According to the DOJ, "government 'knowledge' is relevant only to the question of whether a defendant submitted a false claim 'knowingly.'"  *United States of America's Statement of Interest, U.S. ex rel. Howard v. Lockheed Martin Corp., 1:99-cv-00285, S.D. Ohio*

*(July 3, 2013)*.  More specifically, the DOJ asserts that "government knowledge of deviations from contract specifications is relevant solely on the issue of scienter, and only when there is full disclosure, followed by a meeting of the minds on contract modifications, can a contractor argue that it has not 'knowingly' violated the Act." *United States' Amicus Curiae Brief, U.S. ex rel. Hooper v. Lockheed Martin Corp., 2:08-cv-00561, C.D. Cal. (Dec. 13, 2010), at pp. 6-7*.  The DOJ adds, "this exception only applies in very limited circumstances, when the contractor (1) has affirmatively made full disclosure of the issues and deviation to the government, and (2) is fully cooperating with the government to solve a problem." *Id. at 7*.  The DOJ explained that "contractors are held to the letter of the contract – irrespective of whether the contract terms appear onerous from an ex post perspective, or whether the contract's purpose could be effectuated in some other way – under the maxim that 'men must turn square corners when they deal with the Government.'" *Id., See also United States ex rel. Augustine v. Century Health Services, Inc., 289 F.3d 409 (6th Cir. 2002)* ("the maxim that '[m]en must turn square corners when they deal with the Government' applies fully in the FCA context") (internal quotations and citations omitted). *See, e.g., U.S. ex*

*rel. Hendow v. Univ. of Phoenix, 461 F.3d 1166, 1170 (9th Cir. 2006)* ("In an archetypal qui tam False Claims action, such as where a private company overcharges under a government contract, the claim for payment is itself literally false or fraudulent"); *See also United States v. Southland Mgmt. Corp., 326 F.3d 669, 674-75 (5th Cir. 2003) (en banc)* ("claims for money or property to which a defendant is not entitled . . . are 'false' for purposes of the False Claims Act"). Congress revised the FCA's language to eliminate any specific intent requirement. *See Briggerman, ¶ 58.* This revision was in response to *Allison Engine Co. v. United States ex rel Sanders, 128 S. Ct. 2123 (2008)*, which interpreted 31 U.S.C. § 3729(a)(2)'s language, "to get a false or fraudulent claim paid," as requiring specific intent.

### ii. Record Press Incorrectly Concludes That Mr. Burke's Expert Witnesses Testimony On Damages Is Irrelevant And Inadmissible.

Record Press again fails to address Mr. Burke's argument regarding the opinion of his expert witness by claiming that the expert confined his opinion to damages. *Appellee Brief, pp. 26-27.* However, Record Press misses the gravamen of Mr. Burke's argument, which is that a plain reading of the contract and the corresponding invoices results in no other possible conclusion than

that Record Press had overcharged by exactly ten times the amount for "collating, trimming to size, and binding" which the District Court should have considered in its ruling.  *Appellee Brief, p. 21*.  The fact that Mr. Burke's expert's opinion was confined to damages, does not mean that it should not have been considered with respect to liability. Ignoring, as to liability, the opinion that invoices corresponding to a contract included overcharges, because that opinion was confined to damages, is extremely hyper-technical and also illogical (when, as here, the parties agreed that the contract terms were unambiguous).

### 3. The District Court Properly Denied Record Press's Motion To Award Attorney Fees.

#### a. Standard Of Review

An appellate court reviews decision whether to award fees under the Fair Claims Act's fee-shifting statute for abuse of discretion. *Nat'l Ass'n of Mfrs. V. DOL*, 159 F.3d 599 (D.C. Cir. 1998). An appellate court also reviews a District Court's decision whether or not to sanction a party or counsel pursuant to 28 U.S.C. § 1927 for abuse of discretion. *Wallace v. Skadden, Arps, Slate, Meagher & Flom, LLP*, 362 F.3d 810 (D.C. Cir 2004). Abuse of discretion is a high bar, and

can only be found where it is clear that the decision was made in plain error. "It is settled law that a Court of Appeals will not set aside the action of a District Court… unless the action of the District Court was in clear error or in abuse of discretion." *Maas v. United States*, 371 F.2d 348, 351-352, (D.C. Cir. 1966). Under the "American Rule," there is a strong presumption that parties are responsible for their own costs of litigation no matter what the outcome of the case.

> **b. The Procedural History Of This Case Demonstrates That Mr. Burke's Case Is Neither Frivolous Nor Vexatious And That Record Press Is Not Entitled To Attorneys' Fees**

Record Press has already tried their very hardest to paint this case as a nuisance, but they have failed on every occasion. Record Press filed a Motion for Summary Judgment on October 1, 2008, a Motion for Sanctions Pursuant to Rule 11 on December 4, 2008.  R. 17 and 27.  Record Press argued that this matter is or was frivolous and/or vexatious. Judge Robinson denied both of the aforementioned motions on June 24, 2009. Record Press also filed a counterclaim against Mr. Burke in District Court on July 28, 2008 (less than six months after Mr. Burke filed his initial claim) that they later dismissed voluntarily, presumably because they could not support it. R. 72. This

cross-appeal is just the latest in a long string of attempts to bully Mr. Burke into submission and should be treated as such.

### 4. The District Court Did Not Err As Matter Of Law When It Summarily Dismissed RP Motion For Fees As Wholly Collateral

Record Press appears to argue that in denying Record Press's fee request, the District Court improperly abdicated its responsibility to give due consideration to a motion for fees. However, there is no rule or precedent, cited or otherwise, that suggests that a District Court must grant said motion in order to comply with its responsibility to hear all proper disputes before it. The District Court reviewed Record Press's motion, found it to be wholly collateral to the qui tam action, and denied it accordingly. Record Press is not entitled to an award merely because they complied with procedural requirements, and to state so is absurd. The District Court properly disposed of Record Press's request for fees, and Mr. Burke requests that this Honorable Court affirm that decision.

### a. The District Court Did Not Abuse Its Discretion In Summarily Denying Fees Under The False Claims Act

12

**Fee-Shifting Statute As It At No Point Established**
**That Mr. Burke's Claim Was Frivolous Or Vexatious.**

As discussed above, the District Court at no point found Mr. Burke's claim to be frivolous or vexatious. Mr. Burke has already established that the mere fact that individuals in the government were aware of the overbilling does not preclude liability under the False Claims Act, both in previous filings and earlier in this brief.

Record Press also claims that there was no evidence that they overcharged the government, only that Mr. Burke believed that they did. This is inaccurate. Mr. Burke attempted to introduce multiple spreadsheets and an expert's report demonstrating that Record Press overbilled, but the District Court wrongfully excluded the evidence. Just because the District Court erroneously found that there was no evidence does not mean no evidence existed, especially in light of the fact that the District Court wrongfully excluded evidence from being introduced. Record Press should not be permitted to profit because the District Court made an error of law in excluding evidence

Mr. Burke reasserts and affirms his position that Record Press is liable under the FCA and that the government knowledge defense does not apply. However, even if this Court were to find otherwise,

Mr. Burke has provided significant legal and factual support for his claim raising his case far above and beyond frivolity.

### b. The District Court Did Not Err In Not Accepting Mr. Burke's Admissions Because There Were No Admissions To Accept.

Record Press claims that Mr. Burke admitted that there was "no hostility or dispute at any time between contractor and contractee" and that GPO was "not defrauded". *Appellee Brief, P. 49*. However, Record Press mischaracterizes Mr. Burke's statements by cherry-picking select phrases and stripping them from their context.

Mr. Burke only alleges that GPO itself was "not defrauded but instead pocketed 7% on false claims… it was the United States treasury that was defrauded." Mr. Burke also stated that "[t]here admittedly appears to be no hostility or dispute at any time between contractor and contractee, **albeit we still insist there was no actual 'meeting of minds' until [t]rial or after**…" At most, Mr. Burke admitted that there was an appearance that there was no spite or rancor between the parties, especially because he explicitly states that there was no meeting of the minds **in the same sentence.**

14

Record Press' presentation of these statements is dishonest and disingenuous, and it is clear from the record that Mr. Burke in no way made the admissions that Record Press is representing he did.

### c. Mr. Burke And Counsel Did Not Concede Liability Under 28 U.S.C. § 1927.

Record Press cites *Reliance Ins. Co. v. Sweeney Corp*., Md., 792 F.2d 1137 (D.C. Cir 1986), for the proposition that subjective bad faith is not required to establish liability under § 1927. However, Sweeny is not analogous to the present matter. In *Sweeney*, the party and their counsel claimed that they were not bound by arbitration, refused to cite any facts to support that position, failed to cite any law to support refusal, further failed to cite any facts or law at trial. In contrast, Mr. Burke presented a host of evidence, including more than a thousand pages of invoices and an expert's report demonstrating that Record Press overcharged. As detailed supra, Mr. Burke has provided sufficient evidence to show that Record Press overbilled the federal government, even if individuals within the GPO stated otherwise. This demonstrates not only a lack of bad faith, but also a meritorious and well-founded case. Record Press is essentially asking this Court to

15

award them attorneys' fees against both Mr. Burke and his counsel merely because they received a favorable finding before appeal. This is in direct opposition to the American rule providing that each party pays their own costs and fees.

Mr. Burke and his counsel properly denied liability in their opposition to Record Press's request for fees via the attached affidavits. *E. 1020*. Mr. Gocial's affidavit (and additional evidence discussed in Mr. Burke's affidavit) establishes that the claim was not frivolous. Since liability for a frivolous claim necessitates a frivolous claim, and since both affidivits speak to the fact that the claim was not frivolous, both affidavits clearly do demonstrate that counsel was not liable. Therefore, it cannot fairly be said that Counsel conceded liability, as he merely chose to nip Record Press's absurd argument at an early stage.

Record Press also implies that Mr. Burke's original counsel, Mr. Mark Hanna, withdrew from representation because he believed the claim to be meritless. Record Press offers no support whatsoever for this assertion, which is patently false. Mr. Hanna withdrew from representation, with the consent of Mr. Burke, when the Department of Justice declined to intervene (which would have necessitated an

amount of work perhaps beyond the scope of what Mr. Hanna was able to perform for this particular case; note that in agreeing to take this matter initially and only dropping it when the DOJ declined to intervene, Mr. Hanna's actions suggest that he presumably believed that the DOJ would pick up the case and that it was meritorious) not because he believed the case to be meritless. As they have in the past and will likely continue to do in the future, Record Press distorted or misrepresented this fact, and Mr. Burke requests that this Honorable Court disregard it accordingly.

### d. Mr. Burke Did Not Address The Reasonableness Of Record Press's Fees As It Was Unnecessary And Costly To Do So Because Mr. Burke Already Established That Record Press Was Not Entitled To Any Fees At All

Mr. Burke demonstrated supra that his claim is/was not frivolous. Under the False Claims Act, a defendant cannot recover costs and attorneys fees unless the plaintiff/relator's claim is found to be frivolous or vexatious. As discussed above, Mr. Burke's claim cannot fairly be colored as frivolous or vexatious, no matter what Record Press may claim. Since the claim was not frivolous, the reasonableness or lack thereof of Record Press's fees and costs is not a

17

ripe or relevant point. In arguing that Mr. Burke conceded liability for

"reasonable" fees, Record Press is effectively claiming that because

Mr. Burke did not make an unnecessary argument (several steps down

a path that was not established), he somehow conceded that he is

liable for more than two hundred thousand dollars worth of legal fees.

This is an absurd assertion. Mr. Burke did not argue that the fees were

not reasonable because Record Press did not demonstrate that he owed

those fees. While Record Press may be a large company able to

engage in meritless litigation, Mr. Burke is merely an individual

attempting to fight for his rights and the rights of the taxpayer, and

cannot afford to make unnecessary or unripe arguments, and as such

chose not to address the reasonableness of fees he did not owe.

Record Press and counsel have, from the inception of this case,

tried their very best to bully and intimidate Mr. Burke in an attempt to

cow him into submission and distract from the charges levied against

them. The District Court wisely denied Record Press's motion for

exorbitant attorneys' fees, and this appeal is the latest in a long string

of decisions made with an eye towards scaring Mr. Burke into

submission.

18

## <u>CONCLUSION</u>

Record Press has yet again chosen to rely on misrepresentations and distortions of law and fact, and leans heavily on an inapplicable defense (government knowledge). Furthermore, Record Press continues to seek exorbitant attorneys' fees that they have no cognizable right to, presumably for the sole purpose of intimidating Mr. Burke into capitulating. Mr. Burke thus respectfully requests that this court find in his favor.

Respectfully submitted,

_____

Tyler Jay King, Esq.
Franklin Square Law Group
1225 Eye Street, NW
Washington, DC 20005
(202) 779-9711

19

### CERTIFICATE OF COMPLIANCE WITH RULE 32(a)(7)(B)(ii)

I hereby certify that, according to the word count provided in

Microsoft Word 2011, the foregoing brief contains 3,530 words. The

text of the brief is composed in 14-point Times New Roman

Typeface. The text of the hard copy of this brief and the text of the

PDF version filed electronically are identical. This brief fully

complies with Federal Rule of Appellate Procedure 32(a)(7)(B)(ii).

_____
Tyler Jay King, Esq.
Franklin Square Law Group
1225 Eye Street, NW
Washington, DC 20005
(202) 779-9711

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 30, 2015, I caused the foregoing BRIEF FOR APPELLANT BRIAN BURKE to be served by electronic format via ECF and hand-served by courier upon the court and:

John Lomas
McKenna Long & Aldridge LLP
1900 K Street, NW, Suite 100
Washington, DC 20005
*Counsel for Appellee Record Press, Inc.*

Tyler Jay King, Esq.
Franklin Square Law Group
1225 Eye Street, NW
Washington, DC 20005
(202) 779-9711

21